**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| JAMES TENNYSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 4:20-cv-0902-AGF |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**<u>MEMORANDUM AND ORDER</u>**

This action is before this Court for judicial review of the final decision of the

Commissioner of Social Security finding that Plaintiff James Tennyson was not disabled

and thus not entitled to disability insurance benefits under Title II of the Social Security

Act, 42 U.S.C. §§ 401-434 and supplemental security income (SSI) under Title XVI of

the Act, 42 U.S.C. §§ 1381-1383f.  For the reasons set forth below, the decision of the

Commissioner will be affirmed.

**BACKGROUND**

The Court adopts the statement of facts set forth in Plaintiff's Statement of

Material Facts (Doc. 12-1) and Defendant's Response thereto (Doc. 21-1).  Together,

these statements provide a fair description of the record before the Court.  Specific facts

will be discussed as needed to address the parties' arguments.

---

[1]      Kilolo Kijakazi is now the Acting Commissioner of Social Security.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, she is substituted as the Defendant in this suit.

Plaintiff was born on March 6, 1967, completed high school and vocational training in 1986, and most recently worked as a mechanic from 2001 to July 2014 when his employer's business closed.  Tr. 37, 212, 217, 225.  On June 4, 2015, he protectively filed an earlier application for disability benefits and SSI, alleging a disability beginning July 9, 2014.  After this first application was denied at the administrative level, and after a hearing before an administrative law judge (ALJ), Plaintiff was found not disabled and thus not entitled to benefits.  Tr. 62-74.  On February 19, 2018, Plaintiff filed the second application at issue here, again alleging a disability beginning July 9, 2014, due to heart disease, back pain, fatigue, sleep apnea, depression, and anxiety.  Tr. 87.  After denial at the administrative level, an ALJ held a hearing on April 18, 2019, and heard testimony from Plaintiff, who was represented by counsel, and from a vocational expert (VE).  On July 2, 2019, the ALJ issued a decision finding that Plaintiff had the residual functional capacity (RFC) to perform light work with the following limitations:

> He needs a sit/stand option allowing a change in position every 60 minutes for a few minutes at a time while remaining at the work station; can perform no climbing on ropes, ladders, or scaffolds, but can occasionally climb on ramps and stairs, stoop, kneel crouch, or crawl; should avoid concentrated exposure to temperature extremes, wetness/humidity, and pulmonary irritants, such as gas, fumes, odors, dust, and workspaces with poor ventilation; should avoid concentrated exposure to vibration and work hazards, such as unprotected heights and being around dangerous moving machinery; and is able to understand, remember, and carry out simple instructions consistent with unskilled work.

Tr. 17.

The ALJ next found that Plaintiff could perform certain unskilled jobs listed in the Dictionary of Occupational Titles (DOT) (e.g., silver wrapper, information clerk, ticket

taker), which the VE testified that a hypothetical person with Plaintiff's RFC and vocational factors (age, education, work experience) could perform and that were available in significant numbers in the national economy.  Tr. 25.  Accordingly, the ALJ found that Plaintiff was not disabled under the Act.  On May 12, 2020, the Appeals Council denied Plaintiff's request for review.  Plaintiff has thus exhausted his administrative remedies, and the ALJ's decision is the final decision of the Commissioner before the Court for review.

In his sole point of error, Plaintiff asserts that the ALJ improperly discounted his subjective complaints without sufficient justification from other evidence in the record. He seeks reversal and remand of the decision for a new administrative hearing.

**The ALJ's Decision (Tr. 10-26)**

The ALJ found that Plaintiff had severe impairments of lumbar degenerative disc disease, arteriosclerotic heart disease, coronary artery disease with a history of myocardial infarction with stenting, peripheral neuropathy, insulin dependent diabetes mellitus, obesity, and major depressive disorder.[2]  However, none of Plaintiff's physical impairments, nor a combination thereof, met the severity to satisfy a listing in the regulations.  Tr. 13.

With respect to Plaintiff's mental impairments, such conditions are not deemed disabling unless functional limitations known as "Paragraph B criteria" are present,

---

[2]     The ALJ also noted that Plaintiff had hypertension, hyperlipidemia, hypothyroidism, sleep apnea, and a history of deep vein thrombosis, none of which were severe impairments under the regulations.  Tr. 12-13.  Plaintiff does not challenge the ALJ's findings in this regard.

meaning a claimant has one extreme or two marked functional limitations in his ability

to: (1) understand, remember, or apply information; (2) interact with others; (3)

concentrate, persist, or maintain pace; and (4) adapt or manage oneself.  20 C.F.R.

§ 404.1520a(c)(3).  Applying these criteria, the ALJ found that Plaintiff had only

moderate limitations in the first and third categories, no limitation in the second category,

and only a mild limitation in the fourth category.  As such, the ALJ found that the

paragraph B criteria were not satisfied.  Tr. 16.  In arriving at these findings, the ALJ

noted that, although Plaintiff reported significant limitations in his daily activities, the

evidence did not show marked or extreme limitations in Plaintiff's mental functioning.

For instance, Plaintiff could meet his personal care needs, could do household chores and

yard work, and could drive and run errands.  Tr. 15.  The ALJ noted that psychiatric

markers were largely normal (Tr. 328, 383, 426, 522, 532, 561, 578, 585, 612, 655),

except for two psychological evaluations administered in connection with Plaintiff's

applications for disability and Medicaid benefits (discussed further below).  Tr. 16, 340-

343, 468-471.  Plaintiff underwent inpatient treatment for substance abuse three times in

2017-2018 but did not undergo mental status examinations during those periods.[3]  Tr. 16,

350-359.

        When paragraph B criteria are not satisfied, the relevant listings also have

additional functional criteria known as "paragraph C criteria," used to evaluate "serious

---

[3]        Inpatient treatment records reflect that Plaintiff was diagnosed with substance abuse
disorder and "major depressive disorder, single episode, in full remission."  Tr. 350-359.  Upon
his last discharge in July 2018, it was noted: "James is also taking care of all of his health
concerns at this time.  James has made great progress during his treatment and his care team feels
that he will continue to do well even after leaving treatment."  Tr. 352.

and persistent" mental disorders.  Paragraph C criteria require a medically documented history of the existence of the disorder for at least two years, with evidence of (1) medical treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and that diminishes the symptoms and signs of the claimant's disorder and (2) marginal adjustment, meaning a minimal capacity to adapt to changes in one's environment or to demands that are not already part of one's daily life.  Here, the ALJ observed that the evidence did not establish the presence of paragraph C criteria.  Tr. 16.

In determining Plaintiff's RFC and limitations, the ALJ discussed the following evidence.  Plaintiff testified that he cannot sit or stand for long periods and is easily winded.  He reported experiencing depression and anxiety, sometimes causing him to stay home in bed, and having trouble concentrating.  He reported difficulties with physical movement and in completing tasks.  He said that he could only be on his feet for a couple of hours, would need to rest afterward, and needs to elevate his legs in the evening.  The ALJ found that, while Plaintiff's impairments could reasonably be expected to cause his symptoms, his statements concerning the intensity, persistence, and limiting effects of his symptoms were not consistent with the medical evidence and other evidence in the record.  Tr. 18.

Plaintiff had a long history of insulin-dependent diabetes pre-dating his alleged onset date of July 9, 2014.  He reported myocardial infarction around the onset date but produced no corresponding documentation.  In November 2015, Plaintiff had ischemic chest pain and received two arterial stents.  Tr. 377.  In December 2015, he had a myocardial infarction, which was treated with Plavix, nitroglycerin, aspirin, and heparin.

Tr. 425.  At a follow-up visit later that month, he presented with edema and was prescribed Carvedilol.  Tr. 372.  In January 2016, he presented with a systolic murmur but no abnormalities.[4]  In May 2016, Plaintiff experienced chest pain and was treated with heparin.  He reported being able to perform daily activities and yard work but not excessive exercise.  Tr. 494.  He was noted to have some edema in the lower extremities.  Tr. 522.  His left ventricular ejection fraction was 45-50%.  Tr. 514.

In February 2017, Plaintiff was noted to have a systolic murmur.  Tr. 305.  In May and June 2017, he had bilateral edema and skin infections on his right leg.  Tr. 302, 578, 586.  In October 2017, he had edema and an ejection fraction of 55-60%.  Tr. 299, 566.  In December 2017, Plaintiff went to the ER for chest pain.  His examination and tests were normal, and he was treated with analgesics and discharged.  Tr. 653-660.[5]  In January 2018, Plaintiff went to the ER for a shoulder abscess.  Tr. 598.

In May 2018, Plaintiff underwent a consultative physical examination with Dr. Greggory Kuhlmann.  Tr. 327-335.  Other than obesity, Plaintiff's examination findings were normal.  In June 2018, Plaintiff underwent a consultative psychological evaluation with Dr. Joseph McCormack, who noted that Plaintiff appeared to be experiencing back pain.  Tr. 340-343.  At a cardiac follow-up appointment in June 2018, Plaintiff reported not using his CPAP machine and was advised to use it to reduce workload on his heart.  Tr. 365.  The following month, his examination was normal except for elevated

---

[4]      The ALJ also noted that the Carvedilol was discontinued.  However, the medical record reflects that it was increased.  Tr. 369.

[5]      The medical record from this visit reflect that Plaintiff tested positive for methamphetamine, which the doctor advised might have caused his chest pain.  Tr. 656.

hemoglobin.  Tr. 363.  In August 2018, Plaintiff went to the ER after having a seizure from working outdoors.  His evaluation was largely normal, and his episode was attributed to hyperglycemia.  Tr. 558-564.

In October 2018, Plaintiff went to the ER for foot pain and numbness.  Imaging showed moderate degenerative changes, and it was noted that Plaintiff likely had degenerative disc disease with lumbar radiculopathy.  Tr. 478.  In November 2018, Plaintiff went to the MU Health Care diabetes clinic, where Plaintiff reported non-compliance with his treatment regimen.  His neuropathy was not attributed to his diabetes.  His medications were adjusted, and he was prescribed diabetic shoes.  Tr. 691.

Plaintiff's mental impairments were noted during two consultative examinations. In January 2017, Plaintiff underwent a psychological evaluation by Dr. Thomas Spencer in connection with an application for Medicaid.  Tr. 468-471.  At that time, Plaintiff was homeless and unkempt, with delayed motor behavior, flat speech, and impaired recall.  In June 2018, Plaintiff underwent another psychological evaluation by Dr. Joseph McCormack in connection with his application for disability benefits.  Tr. 340-343.  He appeared depressed and anxious but well-modulated.  His memory and judgment were moderately limited.

The ALJ also noted that Plaintiff's body mass index (BMI) of 40.3 is considered obese, but that the record lacked any indication of depression, anxiety, or reduced range of motion attributable to this condition.  Tr. 20.  The ALJ found that Plaintiff did not present with any persistent pain behavior, fatigue, or respiratory, motor, sensory, or strength deficits.  Similarly, the ALJ noted that the majority of Plaintiff's mental

7

examinations were normal, except for the two consultations conducted for benefits.  The ALJ further found that Plaintiff's impairments could be controlled with medication, but that Plaintiff was non-compliant without financial justification insofar as he had not exhausted his options for prescription assistance but spent money on chewing tobacco and methamphetamine.  Tr. 21.

The ALJ found that, even considering Plaintiff's obesity, the medical evidence did not support a conclusion that Plaintiff had greater functional limitations than those contained in the RFC.  For instance, the medical evidence did not suggest that Plaintiff's conditions would cause him to be absent from work, frequently off task, or need additional breaks.  The ALJ further found that Plaintiff's leg edema could be controlled through compliance with his diabetes treatment regimen, which he often did not follow.  The ALJ noted that Plaintiff himself reported that he could stand for a couple of hours at a time.  The ALJ noted that, although Plaintiff alleged an onset date corresponding to the termination of his last employment, he also testified (and reported to certain providers) that he was laid off and declined to relocate for other work.  The ALJ further found that any limitations in Plaintiff's daily activities were due to lifestyle choice rather than disability.  Tr. 21.

Next, the ALJ discussed the medical opinion evidence in the record.  First, the ALJ found that the opinions of non-examining state agency consultants Drs. Nancy Ceaser, M.D., and Raphael Smith, Psy.D, dated June 2018, were persuasive because both doctors are experts in disability determinations and based their opinions on a comprehensive review of Plaintiff's treatment records and self-reported activities.  Tr. 22.

Dr. Ceaser opined that Plaintiff could lift 20 pounds, stand/walk 6 hours in an 8-hour workday, and occasionally climb, stoop, kneel, crouch, and crawl.  Tr. 96.  She opined that Plaintiff should avoid environmental exposures except for noise.  Tr. 97.  She indicated that Plaintiff's reported limitations were disproportionate to the objective medical evidence.  Tr. 95.  Dr. Smith opined that, despite moderate limitations in concentrating, remembering, and carrying out instructions, Plaintiff could sustain work activity on simple tasks, adapt to changes in the workplace, make simple decisions, and interact appropriately with supervisors and co-workers.  Tr. 99-100.  The ALJ found these opinions consistent with the evidence and further found that Plaintiff's medical records post-dating these opinions did not reflect an appreciable worsening of his symptoms.  Tr. 22.  However, the ALJ deviated from the opinions in that, based on Plaintiff's hearing testimony, the ALJ found that Plaintiff needed a sit/stand option. Tr. 22.

As previously stated, Dr. Joseph McCormack conducted a psychological evaluation in June 2018 in connection with Plaintiff's disability application.  Tr. 340. Dr. McCormack opined that Plaintiff had significant limitations in concentration and adaptation and moderate limitations in remembering information and social interaction. Tr. 88, 343.  The ALJ found this opinion unpersuasive because it was inconsistent with the overall record and only partially supported by the examination.  The ALJ reasoned that Dr. McCormack relied mostly on Plaintiff's self-reports rather than on the objective evidence reflecting normal psycho-social markers in the majority of treatment notes.  The ALJ further noted that Dr. McCormack relied on Plaintiff's self-reports of physical

9

impairments beyond the scope of the doctor's examination and expertise.  Tr. 23.

Dr. Greggory Kuhlmann, an orthopedist, conducted a physical examination in May 2018.  Plaintiff demonstrated full range of motion and normal grip strength and muscle strength upon "fair" effort.  Tr. 333-334.  Dr. Kuhlmann opined that Plaintiff's ability to stand, walk, lift, carry, and travel appeared to be moderately impaired due to his heart condition and diabetes; however, Plaintiff's ability to hear, speak, sit, and handle objects was not impaired.  Tr. 89, 332.  The ALJ found this opinion unpersuasive insofar as Plaintiff's reported exertional limitations were not borne out in the examination and because Dr. Kuhlmann failed to quantify Plaintiff's ability to perform basic work activities in specific terms.  Tr. 23.

Based on the foregoing, the ALJ concluded that the evidence supported an RFC with the limitations described above.  Next, she found that Plaintiff could perform certain unskilled jobs listed in the DOT (e.g., silver wrapper, information clerk, ticket taker), which the VE had stated that a hypothetical person with Plaintiff's RFC and vocational factors (age, education, work experience) could perform and that were available in significant numbers in the national economy.  Accordingly, the ALJ found that Plaintiff was not disabled under the Act.

In his brief before this Court, Plaintiff asserts that the ALJ failed to appreciate his self-reported symptoms and limitations and did not articulate valid justification for discounting them.   In response, the Commissioner maintains that substantial evidence supports the ALJ's evaluation of Plaintiff's subjective complaints and ultimately her RFC determination.

**DISCUSSION**

**Statutory Framework**

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months.  42 U.S.C. § 423(d)(1)(A).  The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability.  The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity.  If not, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments.  A severe impairment is one which significantly limits a person's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(c).

A special technique is used to determine the severity of mental disorders, which are not deemed disabling unless functional limitations known as "Paragraph B criteria" are present, meaning a claimant has one "extreme" or two "marked" functional limitations in her ability to: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(3).  A "marked" limitation means a serious limitation in functioning independently, appropriately, effectively, and on a sustained basis in the given area.  An "extreme" limitation means an inability to function independently, appropriately, effectively, and on a sustained basis in that area. When paragraph B criteria are not satisfied, the relevant listings also have additional functional criteria

11

known as "paragraph C criteria," used to evaluate "serious and persistent" mental disorders.  Paragraph C criteria require a medically documented history of the existence of the disorder for at least two years, with evidence of (1) medical treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and that diminishes the symptoms and signs of the claimant's disorder and (2) marginal adjustment, meaning a minimal capacity to adapt to changes in one's environment or to demands that are not already part of one's daily life.

If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is medically equal to one of the deemed-disabling impairments listed in the Commissioner's regulations.  If not, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work.  If the claimant cannot perform his past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors – age, education, and work experience.  *See, e.g., Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010).  When a claimant cannot perform the full range of work in a particular category of work (medium, light, and sedentary) listed in the regulations, the ALJ must produce testimony by a VE (or other similar evidence) to meet the step-five burden.  *See Baker v. Barnhart*, 457 F.3d 882, 894 (8th Cir. 2006).

**Standard of Review**

In reviewing the denial of Social Security disability benefits, a court must review the entire administrative record to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011). The court "may not reverse merely because substantial evidence would support a contrary outcome. Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted). A reviewing court "must consider evidence that both supports and detracts from the ALJ's decision. If, after review, [the court finds] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the decision of the Commissioner." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (citations omitted). Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. *Id.* The Court "defer[s] heavily to the findings and conclusions of the Social Security Administration." *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015).

**Analysis**

In his sole point of error, Plaintiff asserts that the ALJ improperly discounted his subjective complaints without sufficient justification from the record. As Plaintiff correctly notes, SSR 16-3p, published March 28, 2016, expressly rescinded SSR 96-7p

and eliminated the term "credibility," clarifying that the evaluation of subjective symptoms is not an adjudication of the claimant's character.  SSR 16-3p, FN 1.  Instead, the inquiry focuses on whether the evidence in the record supports a claimant's reports about the intensity and persistence of his symptoms and resulting limitations.  Eighth Circuit precedent continues to employ the term "credibility" to describe this assessment of whether the evidence supports a claimant's subjective complaints.  *See e.g., Nash v. Comm'r, Soc. Sec. Admin*., 907 F.3d 1086, 1090 (8th Cir. 2018) ("Credibility determinations are the province of the ALJ.").  When conducting this evaluation, the ALJ should consider the objective medical evidence and other evidence in the record, such as a claimant's daily activities, the nature, duration, frequency, and intensity of symptoms, precipitating and aggravating factors, and the type of medication and other treatments employed.  20 C.F.R. §§ 404.1529(c) and 416.929(c).  While the ALJ must consider the foregoing factors (known as the *Polaski* factors),[6] she need not explicitly discuss each of them.  *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010).  The ALJ should explain the reasons for discounting a claimant's reports by citing inconsistencies between a Plaintiff's subjective complaints and other evidence in the record.  *Valdez v. Saul*, 4:18-CV-2017-RWS, 2020 WL 1873427, at *5 (E.D. Mo. Apr. 15, 2020).

First, Plaintiff argues that the ALJ's reliance on his normal examination markers (i.e., no respiratory, motor, sensory, or strength deficits, no persistent pain) was misplaced given the nature of his impairments being chronic conditions of diabetes and

---

[6]      *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984).

heart disease.  Plaintiff cites *Rice v. Berryhill*, 1:16-CV-00062-PLC, 2017 WL 4357376
(E.D. Mo. Oct. 2, 2017), where the claimant had obesity, diabetes, and kidney disease but
his other examination markers were normal.  There, the court found that treatment notes
indicating "no acute distress" were not significant considering the claimant's chronic
conditions, and the ALJ failed to adequately develop the record by obtaining a
consultative medical examination.  *Id*. at *8.  Although the court remanded the case for
further development of the record, the court still deferred to the ALJ's credibility
determination where examination findings were normal and treatment notes indicated that
the claimant's conditions were controlled.  *Id*.

    Here, the record contains ample opinion and other evidence supporting the ALJ's
determination that Plaintiff's conditions, though chronic, were not disabling.  As the ALJ
noted, Plaintiff's diabetes long pre-dated his alleged onset date.  Dr. Kuhlmann's
consultative examination in May 2018 revealed no physical abnormalities.  Tr. 328-334.
As relevant to Plaintiff's argument here, his heart rate was normal, his breathing was
regular, and there was no swelling in his extremities.  *Id*.  Dr. Kuhlmann opined that
Plaintiff had moderate limitations in his ability to stand, walk, lift, carry, and travel due to
his breathlessness upon exertion.  Tr. 332.  Dr. Ceaser noted that Plaintiff had exertional
limitations due to heart disease and obesity but opined that Plaintiff could life 20 pounds
occasionally and 10 pounds frequently, could stand or walk for six hours in a workday,
and could occasionally climb stairs, stoop, kneel, crouch, and crawl.  Tr. 96.  She noted
that there was no cardiac reason for Plaintiff's shortness of breath, and he was not on any
pulmonary medication.  Tr. 98.  In short, the ALJ's reliance on normal examination

markers was not the sole basis for her decision but was consistent with the opinion evidence in the record, which together belied Plaintiff's subjective reports as to the severity of his impairments.

Additionally, regarding Plaintiff's mental health, Plaintiff asserts that the ALJ failed to explain how the medical evidence contradicted his subjective reports.  He argues that the normal mental health markers noted during routine examinations are less probative than the two psychological evaluations discussing Plaintiff's full profile and depression.  Plaintiff submits that the ALJ disregarded the opinion evidence concerning his mental health.  To the contrary, the ALJ acknowledged the opinions of Drs. McCormack and Spencer, who, based on Plaintiff's self-reports, found that Plaintiff had a severe impairment of major depressive disorder.  However, based on other evidence, the ALJ was not persuaded that Plaintiff's depression rendered him wholly incapable of work.  The ALJ recognized that Plaintiff had moderate limitations in concentration and in understanding and applying information.  Tr. 16, 20 (referring to memory tests administered by Drs. Spencer and McCormack).  Plaintiff reported no problems interacting with people (Tr. 245), supporting the ALJ's finding of no limitation in this category (Tr. 16).  Similarly, Plaintiff described daily activities reflecting his ability to manage himself.  To the extent there exist any inconsistencies or contradictions between Plaintiff's self-reports and other evidence in the record, they weigh against Plaintiff. Otherwise, the difference is merely in degree, which is for the ALJ to determine. 20 C.F.R. § 404.1520a.  The record supports the ALJ's conclusion that Plaintiff is able to perform unskilled work and carry out simple instructions finds, and the RFC is fashioned

accordingly.

Next, Plaintiff takes issue with the ALJ's finding that Plaintiff could control his symptoms with medication but was non-compliant. Tr. 21. More specifically, Plaintiff argues that the record does not show that his edema was controllable or that he failed to exhaust options for affordable prescriptions. Plaintiff cites *Andrews v. Colvin*, CIV.A. 13-1409-JWL, 2015 WL 225764, at *4 (D. Kan. Jan. 16, 2015), where the ALJ discounted the severity of the claimant's reports because he failed to seek low- or no-cost medications. Where such reasoning is invoked to impugn a claimant's credibility, the ALJ must consider whether the treatment was prescribed and would restore the claimant's ability to work but was refused without justification. *Id*. at *3 (citing *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987)). But Plaintiff mischaracterizes the record and the ALJ's findings in these respects.

Again, Plaintiff's diabetes long pre-dated his alleged onset date. Plaintiff's ability to work did not depend on the resolution of this particular symptom. Further, Plaintiff himself testified that medication and elevation helped with the swelling in his legs. Tr. 39. And the edema was not always present; multiple examination records show no swelling in the extremities and normal range of motion. Regarding the ALJ's rejection of Plaintiff's financial justification, while the record lacks optimal development concerning his pursuit of affordable medications, it also supports the ALJ's finding that Plaintiff had the means to purchase substances that undermined rather than improved his health. Moreover, Plaintiff's delinquency with respect to his prescription regimen, whether due to indigency or otherwise, was not the only form of non-compliance reflected in the

17

record.  For instance, Plaintiff had a CPAP machine but did not use it, he failed to check his blood sugar regularly, and he was uninterested in improving his health through diet.[7] An ALJ properly considers the refusal to follow a course of treatment in determining whether a claimant may receive benefits.  *Young v. Saul*, 4:18-CV-00532-NCC, 2019 WL 4644026, at *5 (E.D. Mo. Sept. 24, 2019) (citing 20 C.F.R. § 404.1530).  Viewing the record as a whole, the Court cannot say that the ALJ committed reversible error by failing to investigate Plaintiff's cost-saving efforts before deeming his non-compliance unjustified.

Plaintiff also argues that the ALJ failed to consider the opinions of the consultative examiners and failed to acknowledge the consistency of his self-reports throughout the record.  The ALJ's decision does not support this characterization.  The ALJ reviewed the opinions of Drs. McCormack, Spencer, and Kuhlmann and observed that their findings about the severity of Plaintiff's limitations were based on Plaintiff's own statements, but she found them inconsistent with the objective medical evidence.  Tr. 23-24.

Finally, Plaintiff contends that his daily activities confirm his self-reported limitations.  While Plaintiff is correct that a person's ability to engage in chores or hobbies does not demonstrate an ability to work, it is proper for an ALJ to consider a claimant's personal activities for purposes of assessing the credibility of his claims of incapacity.  *Nash*, 907 F.3d at 1090.  This is what the ALJ did here in assessing whether the evidence supported his allegations of disability.  Specifically, the ALJ noted that

---

[7]     Treatment notes reflect that Plaintiff was encouraged to restrict sodium intake and control his insulin levels (Tr. 372) and that he would benefit from diet and exercise. Tr. 372, 449.

Plaintiff had custody of his son for a period of time, performed housework and yardwork, ran errands, and met his personal care needs.  The ALJ also found it notable that Plaintiff's alleged onset date coincided with a lay-off from employment as a mechanic (as opposed to a health event), further undermining his claim of disabling impairments.  Tr. 21.  *See Nash*, 907 F.3d at 1090 (affirming the denial of benefits where a claimant whose onset date corresponded to a lay-off was able to perform personal tasks, housework, and errands).

In sum, the ALJ's decision reflects that she considered all the evidence in the record and concluded that the objective clinical findings did not support Plaintiff's subjective claims.  Though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner.  *Winn v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 982, 987 (8th Cir. 2018).  While the Court must take into account "evidence that both supports and detracts from the ALJ's decision, as long as substantial evidence in the record supports the Commissioner's decision, [the Court] may not reverse it because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the Court] would have decided the case differently."  *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015).  When it is possible to draw different conclusions from the evidence and one represents the Commissioner's findings, this Court must affirm the decision.  *Chaney*, 812 F.3d at 676.  Mindful of these principles, the Court cannot say that the ALJ's decision falls outside the available zone of choice.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is

**AFFIRMED**.  A separate Judgment shall accompany this Memorandum and Order.


_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 1st day of February 2022.